Good morning and may it please the Court. My name is Bruno Terabishi and I represent Plaintiff Appellant Mike Sarieddine. Your Honors, this case involves a group of defendants who acquired a cannabis company called Alien Labs and then expanded into vaporizers and e-liquids that directly compete with and infringe my client's prior trademark rights in the Alien Vape Mark and related marks. In fact, after the acquisition and expansion, defendants proceeded to file federal trademark applications for Alien Labs in connection with the vaporizers and e-liquids and the U.S. Patent and Trademark Office, the U.S. PTO, rejected and refused those applications finding a likelihood of confusion with my client's prior registered marks for the same goods. In finding a likelihood of confusion, the U.S. PTO found the marks similar, found the goods similar, found the trade channels similar, and the issued a final refusal that the defendants were unable to overcome. So, as such, this is really a relatively straightforward trademark infringement case, but the District Court did commit a few errors in denying Mr. Sardine's motion for preliminary injunction. Before getting into the substance or the merits of the motion, I'd like to address an overarching issue, which is the Court's failure to comply with Rule, the District Court's failure to comply with Rule 52, which required findings of fact and conclusions of law. The District Court did not issue any written opinion setting forth its reasoning. The only thing that was issued was a minute order saying denied. It didn't contain any reasoning, didn't contain any ---- Robertson, What about the oral statements, though? Zaskowski Right. So that leaves us with the hearing and the transcript of the hearing. And as set forth in the appellate briefing, you can't really tell what the Court concluded with regard to certain sleek craft likelihood of confusion factors, particularly, for example, Factor IV, actual confusion, and Factors VII and VIII. And you can't tell ---- Kennedy And you can't tell the Court ---- I mean, I don't know really what this would get you. It seems, if this went back to Judge Calabretta, I have kind of a sense of where he might go with this based on what he's already said. I mean, he seemed to question the lack of evidence of confusion. So I don't know why that wouldn't be enough. I mean, it seems like we have plenty enough to review this. Zaskowski Right. So, for example, with Factor IV, actual confusion, it's not clear whether the Court ended up weighing that as neutral and not in favor of either party or whether the Court weighed it in defendant's favor. Kennedy What is the evidence of actual confusion? Zaskowski So the evidence of actual confusion, at least on the record before the appellate court, is some messages that were sent to my client that were intended for the defendants. But part of the issue with Factor IV is, you know, it's pretty well established that actual confusion is not a requirement for likelihood of confusion. And the absence of actual confusion under this factor usually just makes this factor neutral, as opposed to making it weigh in favor of the defendant. Kennedy Counsel, my impression is that you're contending that the district judge was required to go through every sleek craft factor in making a likelihood of confusion decision. Is that correct? Zaskowski The general rule, the Ninth Circuit rule, is that the district court is required to go through all relevant sleek craft factors. And in this case, you know, all of the factors come into play. They were all addressed by the Court. We just can't tell how Factors IV, VII, and VIII were really even weighed by the  district court. And when you look at the totality, you know, you need to evaluate and weigh the eight sleek craft factors. And what I struggle with, though, is we're supposed to compare the marks as they appear in the marketplace, not in isolation. And what I see in the record doesn't really show what appeared in the marketplace. It may be one or two, but everything else is just here's theirs, here's yours, but there's nothing that really deals with the marketplace. And perhaps the district judge saw it the same way. Is that right? Well, he relied very heavily on how he believed the marks appear in the marketplace. But when you're comparing the similarity of the marks, you know, there's various legal principles that need to be followed. And one of them is what you alluded to, that the marks have to be compared in their entirety and in the marketplace. But, you know, the other principle is you have to look at the marks and compare them in terms of sight, sound and meaning. The district court didn't look at sound and meaning. So, you know, these marks also appear, you know, when you're encountering them in the marketplace, it's not always visually right. You know, they're spoken on, you know, podcasts, YouTube videos. They also exist in people's minds in terms of meanings and connotations. And both of these brands have a similar meaning and theme, which is aliens, extraterrestrials, outer space.  But forgive me, that's pretty, well, I should call it ethereal. It's very, very general. You know, I look at these marks and they look very distinct to me. They deal with a product that's somewhat similar, but they're really quite different. I would never be confused by looking at these two. What evidence was before the district court that showed that actual consumers were confused by these different marks? Well, again, actual confusion is not required at this stage. And for factor four, the absence of actual confusion just means factor four is weight neutral. There was an instance of actual confusion that was submitted by a plaintiff in the motion for preliminary injunction briefing. The district court did reference it in the hearing, but decided that it was not the volume was not sufficient and disregarded it. And our contention is, OK, if you're going to disregard the evidence of the actual confusion as minimal or de minimis, this factor, according to Ninth Circuit law, should be deemed neutral. And in that case, you have a situation where the district court, of all these eight sleepcraft factors, really only found the factor three similarity of marks to tip slightly in defendant's favor. And so how can you have how can you weigh the totality of the marks and find one factor to be dispositive? That's also a general principle is that no one factor is dispositive. And well, I think this gets back, though, to what my colleague mentioned. It is true that the district judge didn't articulate under Rule 52, perhaps as much as could be done. But there was a lot said that explained the judge's reasoning. And if you don't have to analyze every one of the sleepcraft factors and if the but it met the requirements, why are we why are we contesting that? Well, you do need to address each of the factors that are relevant. And, you know, for example, by the way, there were other marks at issue. You know, my class, the Area 51 mark, the defendants have the Area 41 mark. The district court didn't even address those marks. And, you know, in terms of appearance in the marketplace, I know there's a big focus on that, but, you know, my client has a standard character mark and the standard character mark covers different fonts and stylizations and depictions of the mark. And like the USPTO said, when you're dealing with marks that, you know, have fonts and stylizations and characterizations, it's still the literal element, the words that are dominant and carry more weight because that's what people remember. And, you know, there's also another rule when you're comparing similarity marks, which is if you find that the goods are proximate or related or similar, then it takes less similarity on factor three under a sleepcraft analysis. And so that also doesn't appear to have been considered by the Court. In addition, you know, it really doesn't — I also want to point out in terms of appearance in the marketplace, I mentioned how, okay, you're not always seeing the marks visually. Sometimes you're hearing them. Sometimes you're remembering them. But, you know, there are instances where the defendants are using alien labs not in a character or, you know, a stylized font, just in plain text. So, you know, consumers do encounter the mark in different ways. So, you know, that is worth pointing out as well. Counsel, let me change the subject of this a bit. This is a denial of preliminary injunction. The Winters factors come into play, including irreparable harm. Why did your client wait 18 months before seeking the preliminary injunction? It seems if they're suffering this irreparable harm, it would have been exacerbated by that delay. Yes, Your Honor. So I would say two things. First, I note that the district court did not deny the motion on that basis. And I don't think the defendants cross-appealed on that basis. But to answer your question, there were pending motions to dismiss, and this is briefed in the lower court, and we were waiting for the district court to resolve the motions to dismiss because there was no point to file a motion for preliminary injunction if the court was going to dismiss the case. It got lost somehow in the lower court, the motion did, and we were waiting so long that we just ended up filing the motion because we figured maybe that would trigger the court dealing with the motion to dismiss, and that is what ended up happening. We did cite cases in the lower court standing for the proposition that if there are pending motions to dismiss, that time period while you're waiting for those to be resolved will not be counted against you in the irreparable harm prong.  One other thing. What weight, if any, should the district court have given to the U.S. Patent and Trademark Office's denial? Admittedly, the USPTO's findings are not dispositive, they're not determinative, but generally they're afforded some persuasive value. And I would say in this case, the USPTO's analysis was more detailed than the district court's analysis, especially in terms of looking at the dominant terms, the inherently distinctive terms. So, you know, traditionally when you're looking at comparing marks, the dominant term and the first word are weighed more heavily, that's what people remember. Inherently distinctive terms are weighed more heavily, and generic or weak descriptive terms like vape and labs, they're not discounted altogether, but they're weighed less heavily. And the literal element is weighed more heavily than designs and fonts and characterizations. So, we believe the district court acknowledged the existence of the USPTO's finding, but didn't really afford it any persuasive value. Can I ask you a quick question on the Area 51 versus Area 41? Do you think you gave the district court enough to go on in that particular claim? We did address it in the briefing. Obviously, the focus was on the alien marks as, you know, they make up the bulk of each party's products. But we did address it, and you'll see that in the hearing, the court acknowledged the similarity between Area 51 and Area 41, but when it moved to its conclusions on Factor 3, it didn't address Area 51 and Area 41 at all. But you feel that what you gave the district court was sufficient to be successful in that particular claim? Yes. Yes, Your Honor. And I'll say with regard to the irreparable harm prong under Winter Factor 2, you'll see that obviously the district court didn't afford the presumption because it decided that plaintiff did not show a likelihood of success on the merits. But then it went on to discuss financial harm as a showing of irreparable harm, which was a little confusing and which we contend is legal error because monetary damages are the opposite of irreparable harm. You know, remedies at law are not irreparable harm. Usually for trademarks, you're talking about the damage to a trademark owner's goodwill, the inability to control one's reputation and perception of the mark if you've invested heavily into your mark, not obtaining a reasonable rate of return because of that infringement. So those are the types of irreparable harm that really come into play in trademark infringements, and it's why the Trademark Modernization Act reinstated the presumption of irreparable harm because it was so difficult before it got codified to prove that. I see I'm out of time, Your Honors, unless you have... Well, we'll put two minutes on the clock for rebuttal just so you have the opportunity to respond and we'll hear from your opposing counsel. Thank you. Thank you. Good morning, Your Honors. May it please the Court. My name is Maria Sinatra, and I represent the Appellees, a group of entities and an individual which I will collectively refer to as Connected. The purpose of a preliminary injunction is to maintain the status quo pending a determination on the merits. Here, the status quo has been the parties peacefully coexisting for almost 10 years in the marketplace. The District Court acted within its discretion to deny the preliminary injunction because it looked at the record evidence and applied the correct legal standards of Winter v. Natural Resources Defense Council and the eight likelihood of confusion factors in AMF, Inc. v. Sleetcraft Boats. Accordingly, Connected respectfully requests that this Court affirm. In order for the appellant to be successful on his motion, he needed to satisfy all four prongs of the winter analysis. After receiving the briefing from the parties and evidence and holding a hearing, the District Court found that the appellant was unsuccessful in meeting his burden with regard to two out of the four winter factors, a lack of imminent irreparable harm and a lack of likelihood of success on the merits. Here, the record is clear that there's been a significant delay by the appellant in between when he filed the complaint in this action and when he moved for a preliminary injunction, roughly 18 months. Courts within this district, as well as throughout the country, have found that such significant delay negates any evidence of irreparable injury. Counsel, how do you respond to the opposing counsel's argument that there were pending motions dismissed at that time waiting for resolution, so they thought there was no need to bring the PTO? Well, Your Honor, I'll respond in two ways. First, the appellant's counsel admitted that they filed the preliminary injunction motion to trigger a ruling on the motion to dismiss. You don't file a preliminary injunction motion to trigger a ruling. You file a preliminary injunction motion to stop irreparable harm from occurring. He said it here. They filed the preliminary injunction motion to trigger a ruling on the motion to dismiss. The other way I'll respond to your question is that the two cases cited by the appellant for the premise that a ruling on a motion to dismiss is a proper reason to delay, the time regarding the ruling on the motion to dismiss in those cases was significantly different here. It was a matter of months. And one of the cases cited involved identical use of an identical trademark, Beverly Hills Hotel, where the font was the same and it was basically a counterfeiting situation. The other case cited by the appellant for the premise that the motion to dismiss effectively tolls the time to file a preliminary injunction motion, was where a case was transferred and the motion was filed within two months of a case transfer. So those facts are not present here. In addition to the delay after filing the complaint in this action, the appellant delayed before the filing of the complaint. The record's clear on page 303 that the appellant had actual knowledge, at least as early as May of 2022, of Connected's use of its Alien Labs trademark. It then delayed, he then delayed six months, found the complaint until December of 2022, and then an additional 18 months until July of 2024 to move for a preliminary injunction here. In addition to the significant delay that's apparent in the record, the district court asked the appellant during the preliminary injunction hearing, what evidence of irreparable injury do I have in the record? And the appellant admitted, right, so there isn't any. There isn't a lot of evidence of concrete, any concrete evidence, and that's on pages nine and ten of the record. After asking appellant's counsel what evidence was present and appellant's counsel not being able to point to any, along with the significant temporal delay, the district court acted within its discretion to find that there was no evidence of irreparable injury sufficient to support a preliminary injunction, an extraordinary relief. In addition to the lack of irreparable injury evidence, the district court also analyzed whether or not the appellant met his burden with regard to a likelihood of success in the merits, finding he failed to do so there as well. What about the Area 41 versus 51 issue? Your Honor, the district court was aware of the Area 51 trademark and discussed it on pages 6 and 33 of the record. While the district court's analysis of the Area 51 mark in isolation was admittedly not extensive, it was sufficient here to support the district court's ruling. The appellant failed to meet his burden by putting forth any argument in his motion for preliminary injunction regarding three out of the four winter factors concerning the Area 51 trademark. He didn't mention it in his briefing at all with regard to likelihood of success, sorry, with regard to imminent irreparable harm, didn't mention it with regard to the public interest factor, and didn't mention it in the balance of hardships factor. The only area where the appellant mentioned his Area 51 trademark at all in his motion for a preliminary injunction was within the similarity of the marks factor in the Sleekcraft analysis. It wasn't articulated anywhere else. And that's where the district court discussed it in the preliminary injunction hearing. Here, the record's clear and sufficient to support that the appellant failed to meet his burden with respect to the Area 51 trademark. Well, counsel, the record also shows that your client submitted not one but two different applications to the trademark office that were denied because of the similarity here. And yet your client barged ahead and set up the company anyway. How should we review that type of information? Sure, Your Honor. At the time that those applications cited by the appellant were submitted, Connected had been using the Alien Labs trademark for a number of years and has registrations for the Alien Labs both federally as well as on the State level. So it certainly didn't barge ahead and use the Alien Labs trademark after receiving an office action. Here, the district court was aware of the USPTO examiner's prior ruling raised by the appellant but was well within the district court's right to not adopt that previous finding, particularly as is the case here. The district court had evidence of how the trademarks were used in the marketplace that was not present before the USPTO examiner. The applications discussed by the appellant were filed on a 1B intent-to-use basis, so Connected did not submit any evidence of trademark use in connection with those applications. So the USPTO's findings were abstract. It didn't look to how the marks at issue were being used in the marketplace and actually encountered by consumers. The district court's decision to not abide by a USPTO prior ruling is congruent with how other courts throughout the circuit have dealt with prior USPTO findings. For example, in Blue Bottle v. Layow, in that case, the district court was presented with a prior USPTO ruling but did not adopt it for the same reason as the court didn't adopt it here, had evidence in front of it that was not present before the USPTO examiner. And that case discusses additional cases where USPTO examiner evidence was considered but ultimately not adopted. The Supreme Court in B&B Hardware has also made clear that district courts are not bound by previous findings of USPTO examiners concerning trademark applications. Counsel, there are, of course, a number of marks at issue in this case. What portion of those were actually part of the USPTO request application? Did it include all of them or just part of them? It only includes part of them, Your Honor. Remember which ones? Yes, I do. The USPTO discussed the appellant's purported Alien Vape trademarks. I believe it discussed the trademark Alien Kiss and Alien Piss, and it did not pertain to the appellant's purported Area 51 trademark at all. The district court's analysis of the similarity of the marks factor comports with this court's prior precedent. The district court looked at how the marks appeared as a whole commercially to consumers. On page 32 of the record, it's clear that the district court analyzed the sight, sound, meaning, and commercial impression of the trademarks at issue. The district court explicitly found that the trademarks contained a different number of words, finding the sight different. The district court explicitly stated on page 32 of the record that the marks sound different and perhaps most prominently, the district court found considerable differences in how the marks appear to consumers in the marketplace, and the court discussed that on page 32, finding that Connected's Alien Labs trademark was always presented in a unique stylized font and that Connected's Alien Labs product packaging was always depicted in a bright psychedelic pattern that was not present with the appellant's product packaging. And that is sufficient to support the court's findings here and find that his determination regarding the similarity of the marks was within the court's discretion. The appellant's counsel briefly mentioned actual confusion, so I'll address that factor as well. The district court put forth its findings supporting actual confusion, again, noting the significant time period where the marks have coexisted in the marketplace. I do want to clarify that appellant's counsel indicated that there were messages. There was a sole message. It was not messages, and that's on page 303 of the record. Given the significant period of coexistence, the district court acted within its discretion finding that the actual confusion factor weighed against the likelihood of confusion, particularly where it supported that Connected sold over $41 million in Alien Labs products in 2023 alone. Given that volume of sales, the district court was correct in the court's indication that there should be more evidence of actual confusion here if there was actually a likelihood of confusion. Your opposing counsel objects to, if you will, a lack of written analysis by the district court under Rule 52. What's your response to that? My response, Your Honor, is that a written opinion is not required under Rule 52 at all. The text of Federal Civil Procedure 52 is clear that oral findings of fact and conclusions of law are sufficient to meet Rule 52. Accordingly, considering that the district court found that there was a lack of likelihood of success on the merits evidence and a lack of evidence of imminent irreparable injury, it held that the appellant failed to meet his burden with regard to the preliminary injunction factors. The district court was not required to address the remaining factors under Garcia v. Google, and we respectfully ask that this court affirm. I'll concede the remainder of my time unless there are further questions. Okay, thank you, and we'll hear two minutes of rebuttal. Your Honors, there was a large focus on the time period that passed. However, the reference to 10 years is misleading because defendants, before they acquired that Alien Labs cannabis company, that company was simply a cannabis company. It did not expand into vaporizers and e-liquids until 2021, summer of 2021. So that's really when the product started to directly compete with and infringe my client's vaporizers and e-liquids. In addition, the reference to existing state trademark registrations, my response to that is those registrations are not for e-liquids and vaporizers. They're just for cannabis. And there's no examination process at the state level like there is at the USPTO. They just rubber stamp those registrations. So federal registrations still trump any state registrations, but they're basically a red herring. They're not an issue. The reference to the USPTO not addressing Area 51 and Area 41, that's because defendants did not apply for the Area 41 mark at the USPTO. They applied for Alien Labs. So there'd be no reason for the USPTO to bring up Area 51 in denying the defendants Alien Labs trademarks. They're only making common law use of Area 41. So they're using it without a registration. Very similar to how they're now using Alien Labs without a registration for vaporizers and e-liquids because they couldn't get that registration at the USPTO. Again, with regard to the delay... Andrew, you're into borrowed time here a little bit. So why don't you just wrap up? I was just going to say, with regard to the alleged delay cutting against irreparable harm, again, the district court did not use that as a basis for denying the motion for preliminary injunction, and it was not raised on cross-appeal. Thank you, Your Honors. Thank you. We thank both counsel for the briefing and argument. This case is submitted. We want to again thank Chief Judge Morris for being with us today. That concludes our week here in San Francisco, and we are adjourned. Thank you.
judges: SMITH, BRESS, Morris